**Cathy S. YOST, Respondent Below, Appellant,**

v.

**Loral JOHNSON, Petitioner Below, Appellee.**

Supreme Court of Delaware.

Submitted: Dec. 18, 1990.

Decided: April 12, 1991.

Rehearing Denied May 10, 1991.

Aida Waserstein, Waserstein & Demsey, Wilmington, for appellant.

Robert G. Gibbs, Wilson, Halbrook & Bayard, Georgetown, for appellee.

Before CHRISTIE, C.J., HORSEY and MOORE, JJ.

MOORE, Justice.

This case arises out of a custody dispute in Family Court between Loral R. Johnson, a resident of Delaware, and Cathy S. Yost, a resident of Vicenza, Italy. Two decisions of that court are at issue. In the first case, the Family Court held that it had subject matter jurisdiction over the custody dispute pursuant to the Uniform Child Custody Act ("UCCJA") as enacted in Delaware. In its second decision, the court awarded custody of the parties' two children, Mark and Ian, to their natural father, Loral R. Johnson.

We find that the Family Court never had subject matter jurisdiction over this case. The court deprived Yost of her due process rights when it exclusively relied on an *ex parte* communication to determine that Delaware was a proper forum under 13 *Del.C.* § 1903(4). We also conclude that the trial court had no jurisdiction in this case under the UCCJA. Accordingly, we reverse the judgments below in their entirety.

## I.

Loral R. Johnson and Cathy S. Yost were divorced in Pennsylvania on October 31, 1981. The original divorce decree contained a custody and visitation agreement giving Yost custody of her two children. Yost later moved to Virginia with the children, and Johnson moved to Delaware in August, 1983.

On April 27, 1982, the Juvenile and Domestic Relations Court of Fairfax County, Virginia, entered a new order which only affected the visitation provisions of the original Pennsylvania decree. Pursuant to the new Virginia visitation schedule, Johnson was entitled to visit his children one weekend per month, the first three weeks of July, and alternating Christmas and Thanksgiving holidays. Johnson regularly visited his children between April, 1982 and September, 1988.

Yost married an Air Force sergeant while she was living in Virginia. The family moved to Italy in July, 1988, after Yost's husband voluntarily accepted a four-year military assignment. There was no evidence in the record that Yost's move surprised Johnson. There also was no evidence in the record that Johnson objected to the move. The children next visited Johnson in Delaware between June 5 and July 25, 1989. At the end of the visit, Johnson did not return the children to Italy and attempted to modify the Virginia decree in Delaware.

## A.

Johnson filed a petition in the Family Court seeking emergency temporary custody of the children. The Family Court denied the motion, but scheduled the matter for a hearing and issued an order prohibiting Johnson from removing the children from Delaware. Yost arrived from Italy and filed her own petition seeking the court's permission to take the children to Virginia pending the outcome of the Delaware proceedings. The court granted Yost's petition. *In re Johnson*, Del.Fam., No. 89–7–119CV, Millman, J. (July 27, 1989) (ORDER). At the initial hearing, the court issued a briefing schedule to address Yost's challenge to the Family Court's jurisdiction. *In re Johnson*, Del.Fam., No. 89–7–119CV, Conner, J. (Aug. 7, 1989) (EMERGENCY ORDER). The trial judge permitted Yost to return to Italy with the children while the matter was pending. *Id.*

Finally, on November 3, 1989, the trial court issued its decision denying Yost's motion to dismiss for lack of subject matter jurisdiction. *See In re Johnson*, Del.Fam., No. 89–7–119CV, Millman, J. (Nov. 3, 1989) (ORDER). The court held a trial on the merits of Johnson's custody petition on

April 25, 1990. The court rendered an oral opinion awarding custody of both children to Johnson on May 4, 1990. The court memorialized its oral opinion in a written order dated May 15, 1990. *See In re Johnson*, Del.Fam., No. 89–7–119CV, Millman, J. (May 15, 1990) (ORDER).

Yost appeals to this Court, contesting both: (1) the Family Court's Order dated November 3, 1990, finding jurisdiction; and (2) its decisions on the merits of the custody claim rendered in the Spring of 1990. We heard oral argument on December 18, 1990, and immediately issued an order returning custody of Mark and Ian Johnson to their mother. *See Yost v. Johnson*, Del. Supr., No. 179, 1990, Moore, J. (Dec. 19, 1990) (ORDER). We stated in our order that this opinion more fully explicating our views would follow.

We conclude that it is unnecessary to reach the merits of the Family Court's decision to award custody of Mark and Ian to their natural father. We find that the Family Court committed legal error, and violated Yost's due process rights when it ruled, on the basis of an *ex parte* communication with a Virginia court, that it had subject matter jurisdiction to decide this case under the UCCJA as enacted in Delaware. *See* 13 *Del.C.* §§ 1901–1925.

### B.

The Family Court held that it had subject matter jurisdiction to consider Johnson's custody petition pursuant to Section Three of the UCCJA. *In re Johnson*, Del.Fam., No. 89–7–119CV, Millman, J. (Nov. 3, 1989) (ORDER) ("ORDER"); 13 *Del.C.* § 1903. Section Three of the UCCJA, as enacted in Delaware, provides four distinct "tests" to determine whether a court has subject matter jurisdiction:

(1) This State:
    a.  Is the home state of the child at the time of the commencement of the proceeding; or
    b.  Had been the child's home state within 6 months before commencement of the proceedings and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

(2) It is in the best interests of the child that a court of this State assume jurisdiction because:
    a.  The child and his parents, or the child and at least 1 contestant, have a significant connection with this State; and
    b.  There is available in this State substantial evidence concerning the child's present or future care, protection, training and personal relationships; or

(3) The child is physically present in this State and:
    a.  The child has been abandoned; or
    b.  It is necessary in an emergency to protect the child because he has been subjected or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(4) It appears that *no other state* would have jurisdiction under prerequisites substantially in accordance with subdivisions (1), (2) and (3) of this section, or another *state* has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and it is in the best interests of the child that this court assume jurisdiction....

13 *Del.C.* § 1903 (emphasis added).

The trial court specifically rejected Johnson's arguments that it could accept jurisdiction under 13 *Del.C.* §§ 1903(1) & (2).[1] *See In re Johnson*, Order at 3–4. The court ruled that the "children did not have a significant connection" to Delaware. *Id.* at 4. However, the Family Court found jurisdiction under 13 *Del.C.* § 1903(4), ruling that the Virginia Family Court had effectively deferred adjudication of the custody issue to Delaware. *See* 13 *Del.C.* § 1903(4); *In re Johnson*, Order at 4.

The trial judge reached this conclusion after consulting with Judge James W. Fourqurean of the Virginia Juvenile and

---

1. 13 *Del.C.* § 1903(3) was not at issue in this case.

Domestic Relations District Court, Nineteenth Judicial District in an *ex parte* telephone call. The Family Court Judge acknowledged:

> I contacted the Honorable James W. Fourqurean of the Juvenile and Domestic Relations Court of Fairfax County, Virginia. *Judge Fourqurean deferred to this Court the decision on the issue of custody of these children.* His decision was based on the fact that the respondent and the children have not lived in Virginia since July 15, 1988. It was Judge Fourqurean's belief that the issue of domicile was not significant. It was Judge Fourqurean's belief that the physical residence of the children was of more importance than domicile since in deciding the issue of custody, consideration of housing, schooling, neighborhood environment, friends, family and medical needs, among other things, needed to be examined and it was his belief these issues could only be properly addressed by the courts of Delaware or Italy. *In re Johnson,* Order at 3 n. 1 (emphasis added).

Even though there was no other record of the trial judge's conversation with Judge Fourqurean, and no written decision to memorialize Judge Fourqurean's conclusions, the Family Court decided that Virginia had effectively "declined jurisdiction." *Id.* at 4. *See also In re Johnson,* Del.Fam., No. 89-7-119CV, Millman, J. (May 15, 1990) (ORDER) (Family Court can consider merits of custody petition because "Virginia relinquished jurisdiction to this Court.").

### C.

Yost argues on appeal that the trial court's reliance on 13 *Del.C.* § 1903(4) was totally misplaced. She claims that the Family Court violated her rights to procedural due process when it: (1) contacted the Virginia court without notifying the parties; (2) failed to permit the parties to participate in the telephone conversation; and (3) failed to create or produce a written record of the call. Yost also argues that the trial court erred by not considering Italy as a more proper forum to hear the case under the UCCJA.

Johnson contends that the UCCJA authorized the trial judge to contact the Virginia Court on an *ex parte* basis. He thus argues the Family Court did not violate Yost's due process rights. Johnson also claims that Virginia had effectively declined subject matter jurisdiction in this case. He refutes Yost's argument that Italy is the proper forum to consider this case and maintains that Yost cannot raise the issue of Italian jurisdiction for the first time on appeal. Johnson finally argues that the UCCJA prohibits the court from considering Italy a proper forum even if Yost could contest the Family Court's jurisdiction.

### II.

We start with the relevant standard of review. Yost contends that the trial court violated her due process rights guaranteed under the United States and Delaware Constitutions. She also claims that the Family Court misapplied the UCCJA. This Court will review questions of law *de novo* to determine whether the trial court committed legal errors. *See Ruggles v. Riggs,* Del.Supr., 477 A.2d 697, 703-04 (1984); *Fiduciary Trust Co. N.Y. v. Fiduciary Trust Co. N.Y.,* Del.Supr., 445 A.2d 927, 930 (1982).

### A.

Turning to the merits of the appeal, we find that the trial court's *ex parte* communication with the Virginia judge resulted in a serious violation of Yost's constitutional rights to procedural due process. *See* U.S. CONST. amend. XIV, § 1. DEL. CONST. art. I, § 9; *cf. State v. Rose,* Del.Super., 132 A. 864, 868-69 (1926) (meaning of "due process" substantively same under United States and Delaware Constitutions).

This Court has previously stated in *Ruggles v. Riggs,* Del.Supr., 477 A.2d 697 (1984) that:

> In the courts of Delaware persons are to be accorded the *most scrupulous adherence* to the constitutional mandate of due

process ... *The Family Court is no exception to that unalterable rule.* 477 A.2d at 703 (citations omitted) (emphasis added).

The hallmark of due process in a civil proceeding before a Delaware court is notice and an opportunity to be heard. *See Perrine v. Pennroad Corp.,* Del.Supr., 47 A.2d 479, 486, *cert. denied,* 329 U.S. 808, 67 S.Ct. 620, 91 L.Ed. 690 (1946); *Aprile v. State,* Del.Super., 143 A.2d 739, 744, *aff'd,* 146 A.2d 180 (1958). As the Superior Court stated in *Aprile:*

> Due Process in judicial proceedings implies action in conformity with the general law based upon evidence, and after a *full hearing upon notice to the party or parties affected and an opportunity to be heard.* 143 A.2d at 744 (emphasis added).

■ The trial judge impermissibly contacted Judge Fourqurean without notifying either Johnson or Yost. He then relied upon this *ex parte* communication to reach the conclusion that Virginia had effectively surrendered jurisdiction over Johnson's custody petition to the Delaware Family Court. There is no evidence that the Family Court kept a written record of the conversation. There was neither notice nor an opportunity for the parties to be heard on this significant issue.

The trial judge's action in this case represents a departure from acceptable notions of due process guaranteed under the Delaware Constitution. A judge should not engage in a substantive *ex parte* communication concerning the merits of an issue pending before the court. *See, e.g., Ruggles,* 477 A.2d at 702 ("ex parte consultation by a trial judge with experts has no place in the judicial process."); *Phillips v. Del. Power & Light Co.,* Del.Supr., 216 A.2d 281, 285 (1966); *Barks v. Herzberg,* Del. Supr., 206 A.2d 507, 509 (1965).

This case did not present an emergency situation which might necessitate an *ex parte* communication. Furthermore, even in emergency situations, the trial judge must at least maintain a proper written record of the *ex parte* communication and thereafter provide the parties the opportunity to be heard on the issues relating to, or arising from, the communication. Absent an emergency, the trial judge had a fundamental duty to notify the parties of the intended communication in advance, and to permit them to meaningfully participate in the discussion. Anything less does not comport with basic principles of due process. *Eberly v. Eberly,* Del.Supr., 489 A.2d 433, 440–43 (1985); *Abdel G.S. v. Badrban H.K.,* Del.Supr., 453 A.2d 94, 96 (1982).

Johnson also argues that the due process issue is not dispositive because the UCCJA encourages judges to communicate directly with each other. He specifically claims that the Family Court was authorized to communicate directly with Judge Fourqurean under the *forum non conveniens* section of the UCCJA. *See* 13 *Del.C.* § 1907(d).[2] On closer inspection, Johnson's claim is meritless.

Johnson clearly confuses subject matter jurisdiction with the doctrine of *forum non conveniens.* Delaware has long recognized *forum non conveniens* as a common law remedy enabling a court to transfer a case to a venue more convenient to the parties. *See Miller v. Phillips Petroleum Co. Norway,* Del.Supr., 537 A.2d 190, 201–02 (1988); *Parvin v. Kaufman,* Del.Supr., 236 A.2d 425, 427 (1967); *Dietrich v. Texas Nat'l Petroleum Co.,* Del.Super., 193 A.2d 579, 584–88 (1963); *Winsor v. United Airlines Inc.,* Del.Super., 154 A.2d 561, 563 (1958). An underlying assumption of the *forum non conveniens* doctrine is that both the original court and the proposed new venue have subject matter jurisdiction to consider the case. As the Supreme Court of the United States ruled many years ago, "*forum non conveniens* can *never apply* if there is absence of jurisdiction...." *Gulf Oil Corp. v. Gilbert,* 330

---

**2.** 13 *Del.C.* § 1907(d) provides:

Before determining whether to decline or retain jurisdiction, the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

U.S. 501, 504, 67 S.Ct. 839, 841, 91 L.Ed. 1055 (1947) (emphasis added); *Dietrich,* 193 A.2d at 586.

The Delaware UCCJA does not modify the common law doctrine of *forum non conveniens.* Section 1907(a) clearly provides that only "[a] court which has jurisdiction under this chapter" is authorized to consider whether to apply the doctrine. 13 *Del.C.* § 1907(a). The official commentary to the UCCJA confirms that the *forum non conveniens* section was intended only as a secondary inquiry once a court had already established primary subject matter jurisdiction. *See* Comment UCCJA Section Seven, *reprinted in* 1 J. McCAHEY, M. KAUFMAN, C. KRAUT & J. ZETT, CHILD CUSTODY VISITATION AND LAW PRACTICE 3A–60 (1990) (Section Seven "serves as a second check on jurisdiction once the test of sections 3 [13 *Del.C.* § 1903] or 14 has been met.")

### B.

■ Johnson also argues that resolution of Yost's due process claim is not dispositive because the Family Court had an independent basis to establish subject matter jurisdiction. Johnson relies on an affidavit he submitted to the trial court as conclusive proof that Virginia had declined jurisdiction. He therefore concludes that the trial court properly considered his petition under 13 *Del.C.* § 1903(4).[3]

■ According to his affidavit, Johnson contacted a Fairfax, Virginia "intake officer" on July 24, 1989, and asked whether he should file a custody modification petition in Virginia. This was almost at the end of the children's visit in Delaware.

The affidavit recites that the "intake officer" told Johnson to file his petition in Delaware because "Mrs. Yost no longer had residence or ties" in Virginia. The affidavit also mentions that Johnson contacted a second Virginia "intake officer" on July 28, 1989. This second "intake officer" also advised Johnson to file a petition in Delaware. Johnson's counsel admitted at oral argument that Johnson never sought the independent legal advice of Virginia counsel either before or after his discussions with the two Virginia "intake officers."

We note that the trial court did not explicitly consider Johnson's affidavit when it decided that it had subject matter jurisdiction. Nonetheless, we find that Johnson's affidavit cannot serve as conclusive proof that Virginia declined jurisdiction in this case.

Article Four, Section One of the United States Constitution provides that a state court must give "Full Faith and Credit" to the "judicial proceedings of every other State." U.S. CONST. Art. 4, § 1. The Delaware courts have long recognized that the Full Faith and Credit clause is only applicable where a foreign jurisdiction has both subject matter and personal jurisdiction over the defendant and renders a "duly authenticated" final decision. *See, e.g., Iowa–Wisconsin Bridge Co. v. Phoenix Finance Corp.,* Del.Supr., 25 A.2d 383, 391, *cert. denied,* 317 U.S. 671, 63 S.Ct. 79, 87 L.Ed. 539 (1942); *Bata v. Hill,* Del.Ch., 139 A.2d 159, 165 (1958); *Brown v. Ins. Equities Corp.,* Del.Ch., 21 Del.Ch. 273, 187 A. 18, 19 (1936); *Sevison v. Sevison,* Del.Super., 396 A.2d 178, 181–82 (1978).

---

**3.** Johnson also argues that the Family Court could have found subject matter jurisdiction under 13 *Del.C.* § 1903(2) even if the court improperly assessed the Virginia jurisdiction question under 13 *Del.C.* § 1903(4). Johnson claims that he and the children established the statutorily mandated "significant connection" with Delaware through "a period of six years of visitation." 13 *Del.C.* § 1903(2).

Johnson's claim is untenable given the Family Court's reluctance to assume jurisdiction pursuant to 13 *Del.C.* § 1903(2) when there is short physical contact with Delaware and the bulk of the treatment and care of the children is clearly in another state. *See Fielder v. Thorn,* Del.Fam., 525 A.2d 576, 579 (1987); *Grayson v. Grayson,*

Del.Fam., 454 A.2d 1297, 1300 (1982) ("[t]he term 'significant connection' is authoritatively defined as *maximum* rather than *minimum* contact with the state and is intended to *limit jurisdiction* rather than to proliferate it.") (emphasis in original). The bulk of contacts in this case is clearly not in Delaware. Especially in view of *Grayson,* this Court cannot authorize the Family Court to assume jurisdiction in a case where the children continuously lived with their mother in Italy for many years and the only prolonged contact that Johnson and the children shared with Delaware occurred after Johnson refused to return his children to their mother. *See, e.g., Grayson,* 454 A.2d at 1300–01.

Accordingly, Delaware will recognize a foreign judgment only if it was issued in conformity with due process. *Id.*

As reported in Johnson's affidavit, the judgment of two Virginia "intake officers" that Virginia did not have jurisdiction over the modification of custody petition is not entitled to any preclusive or conclusive effect in a Delaware court. There is absolutely no evidence that either "intake officer" was imbued with judicial authority. Indeed, it is even questionable whether the "intake officers" were authorized to give the alleged advice attributed to them. Even if Johnson's inquiries were somehow deemed "judicial proceedings," the record clearly indicates that the "proceedings" violated due process, because Yost had absolutely no notice or opportunity to contest the "intake officers" findings.

We conclude that the trial court had no authority to modify Johnson's custody petition under the UCCJA. The Family Court violated Yost's due process rights, and lacked an independent rationale to find subject matter jurisdiction under the UCCJA.[4] Thus, the Family Court's decision to uphold subject matter jurisdiction on the basis of the default provision of 13 *Del.C.* § 1903(4) was incorrect under the circumstances. Accordingly, the judgments of the Family Court are hereby REVERSED.

4. We note that the Virginia court may have deferred jurisdiction to Italy if Johnson had filed his child custody modification petition in Virginia. Yost argued that Italy could satisfy the first two jurisdictional tests of UCCJA Section Three because the children had continuously resided in that country for at least one year preceding Johnson's suit. Johnson, however, correctly argued that Section Three only refers to residence in a "state." He also correctly claimed that the UCCJA defines a "state" as "any state, territory or possession of the United States, the Commonwealth of Puerto Rico and the District of Columbia." 13 *Del.C.* § 1902(10). Johnson therefore concluded that the Italian courts should never obtain jurisdiction.

No state court has yet resolved the issue whether a foreign country can qualify as a "state" within the meaning of Section Three of the UCCJA. However, in a case that mirrors the present dispute, the Virginia Supreme Court ruled that England qualified as a "state" within the meaning of the *forum non conveniens* section of the UCCJA. *See Middleton v. Middleton,* 227 Va. 82, 95, 314 S.E.2d 362, 368 (Va.1984).

*Middleton* involved a custody dispute between a separated couple. The husband resided in Virginia and the mother lived in England. According to a Virginia custody agreement, the children lived in England and visited their father on summer vacations. 227 Va. at 88, 314 S.E.2d at 364. During one summer visitation, the father decided not to return the children and sought to modify the custody decree in Virginia without warning his estranged wife. *Id.* The mother flew to Virginia and took her children back to England. *Id.* She then instituted a custody suit in the English courts and requested the Virginia court to defer its judgment pending the outcome of the foreign suit. *Id.*

The parties in *Middleton* both agreed that Virginia had subject matter jurisdiction. Instead, the mother requested Virginia to defer to the English court's decision under the *forum non conveniens* section of the UCCJA. The relevant section of the Virginia version of the UCCJA provides that a court should defer judgment if "a court of another *state* is a more appropriate forum." *Id.* at 94, 314 S.E.2d at 368 (emphasis added).

*Middleton* decided to give the term "state" a liberal interpretation to help effectuate the general purposes of the UCCJA. *Id.* The Virginia Supreme Court reasoned that recognizing England as a "state" was justifiable under the UCCJA because: (1) English law was very similar to Virginia jurisprudence; (2) England had a closer connection between the mother and her children; and (3) most of the relevant evidence was located in England. *Id.* at 94–95, 314 S.E.2d at 367–68.

*Middleton* also recognized the procedural advantage the father obtained when he refused to return his children to England. The court noted:

While father did not "snatch" the children in the true sense of the word, he engaged in an equivalent act by refusing to return them in violation of a visitation agreement; he procured a tactical advantage by his conduct. *Id.* at 95–96, 314 S.E.2d at 369.

We were also mindful of the tactical advantage Johnson secured when he "contacted" Virginia and then chose to file his petition in the Delaware Family Court the next day. Johnson's counsel even admitted at oral argument that the Virginia court would probably have found that Italy was a proper forum under *Middleton.* Although we express no view as to the motives underlying Johnson's conduct in this matter, we will not permit parties in a custody dispute to "forum shop" with the Delaware courts in complete derogation of the stated purposes of the UCCJA. *Id.* at 91–94, 314 S.E.2d at 366–367.