STATE OF NEBRASKA EX REL. PENNY J. GRAPE, AS MOTHER AND NEXT FRIEND OF CODY J. GRAPE, A MINOR CHILD, APPELLANT, V. ROY A. ZACH, APPELLEE.

524 N.W.2d 788

Filed December 9, 1994.   No. S-93-454.

30

Clark J. Grant, of Grant, Rogers, Maul & Grant, for appellant.

Terrell R. Cannon, of Law Offices of Terrell R. Cannon, for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.

CAPORALE, J.

## I. STATEMENT OF CASE

The district court granted custody of the minor child of the parties, the petitioner–appellant mother, Penny J. Grape, and the respondent–appellee father, Roy A. Zach, to the latter. Grape appealed to the Nebraska Court of Appeals, contending, in summary, (1) that the district court lacked subject matter jurisdiction to entertain the proceeding and (2) that, in any event, it erred in finding that the boy's best interests would be served by placing his custody with Zach. The Court of Appeals determined that the Nebraska Child Custody Jurisdiction Act, Neb. Rev. Stat. §§ 43–1201 through 43–1225 (Reissue 1993), hereinafter referred to as the act, deprived the district court of subject matter jurisdiction, and thus ordered the proceeding dismissed. *State ex rel. Grape v. Zach*, 94 NCA No. 13, case No. A–93–454 (not designated for permanent publication). Zach thereupon successfully sought further review by this court. We now reverse the judgment of the Court of Appeals and remand with the direction that it reinstate and affirm the judgment of the district court.

## II. BACKGROUND

In early 1989, the State of Nebraska, on Grape's relation, filed this filiation proceeding against Zach. The petition asserted that Grape and the minor child, a boy, who was born May 14, 1987, were residents of Platte County, Nebraska, and asked the court to adjudge Zach the boy's father and order him to pay child support. After Zach admitted paternity, the district court entered judgment in accordance with Grape's prayer.

The matter then lay dormant until March 23, 1992, when

Grape filed a "Verified Motion For Custody Order" in which Grape swore that Zach was in wrongful physical possession of the boy and prayed for an order determining her to be the boy's natural custodial parent and requiring Zach to immediately return him to her possession.

Grape further vowed in her pleading that Zach had not sought or obtained legal visitation rights to the boy and that, with the exception of a 2–week period in June 1990, there had been "little or no visitation" between the two. The pleading recited that sometime shortly after June 1990, she and the boy, with Zach's knowledge and consent, moved to Lisbon, New York, returning to Columbus, Nebraska, 1 1/2 months prior to filing her motion. The pleading recites that she thereafter, on February 27, 1992, agreed to a 1–week period of visitation between Zach and the boy. However, Zach, at the conclusion of that period, refused to return the boy to her possession, but, rather, kept the boy at his residence in Lincoln, Nebraska.

On the same day that Grape filed her motion, the district court entered an order granting custody of the boy to Grape. The March 23, 1992, order recited that the matter was before the court on an ex parte motion to "determine custody and placement" and specifically found that no other order establishing visitation rights between Zach and the boy existed and that Zach was in wrongful possession of the boy. It further ruled that Grape was the natural custodial parent of the boy and was entitled to his immediate possession.

Zach subsequently filed a document entitled "Motion to Set Aside Order, for Temporary Custody, and for Order Prohibiting [Grape] from Removing Child from State." At this point, Grape's counsel withdrew. Consequently, Zach sent notice of the hearing scheduled on his pleading directly to Grape at her last known address in Columbus. Grape failed to appear at the scheduled hearing, at which time the district court set aside its March 23, 1992, ex parte order and granted Zach temporary custody until it could make a permanent custody determination. The district court also ordered that the boy not be removed from Nebraska.

Zach filed that temporary custody order in New York, where Grape and the boy had gone, and Zach returned to Nebraska

with the boy in August 1992. The boy has remained in Nebraska in Zach's possession throughout the remainder of these proceedings.

Through a new attorney, Grape then filed a demurrer to Zach's motion, alleging a defect of parties and lack of personal service. Determining that Zach had not properly raised the issue of custody and had failed to properly serve Grape, the district court sustained Grape's demurrer and granted Zach leave to amend.

Zach thereupon filed an "Application for Temporary and Permanent Custody of Minor Child," along with an affidavit asserting that it was in the best interests of the boy that Nebraska assume jurisdiction because Nebraska was the state in which he was born and had lived for several years. The application further alleged that expert and family witnesses and evidence concerning the boy's education, medical care, and speech therapy were available in Nebraska.

In response, Grape filed a motion to dismiss the application, claiming that Nebraska lacked jurisdiction to determine the boy's custody because it was not the child's home state as defined in the act.

Following a hearing, the district court found that substantial evidence concerning the boy's care, protection, training, and personal relationships was available in Nebraska; concluded that it had jurisdiction to determine the boy's custody; and overruled Grape's motion to dismiss. After a still further hearing on April 22, 1993, at which the evidence described later in part VI was adduced, the district court, on April 29, 1993, entered an order which placed permanent custody of the boy in and with Zach and granted Grape supervised visitation rights.

### III. PROCEDURAL IRREGULARITY

At this juncture we focus on Grape's election to question whether the district court possessed subject matter jurisdiction by a "Motion to Dismiss for Lack of Jurisdiction." While a court's jurisdiction over the subject matter may and should be questioned early in the proceedings by a demurrer, Neb. Rev. Stat. § 25–806 (Reissue 1989) and *Concerned Citizens v. Department of Environ. Contr.*, 244 Neb. 152, 505 N.W.2d 654

(1993), we must point out once again that the issue may not properly be raised by a pretrial motion to dismiss, such pleading not being a part of this state's procedure. See, *Pappas v. Sommer*, 240 Neb. 609, 483 N.W.2d 146 (1992); *Cool v. Sahling Trucks, Inc.*, 237 Neb. 312, 466 N.W.2d 71 (1991); *United States Fire Ins. Co. v. Affiliated FM Ins. Co.*, 225 Neb. 218, 403 N.W.2d 383 (1987); *Nelson v. Sioux City Boat Club*, 216 Neb. 484, 344 N.W.2d 634 (1984); *Blitzkie v. State*, 216 Neb. 105, 342 N.W.2d 5 (1983); Neb. Rev. Stat. § 25-803 (Reissue 1989).

We recognize that in *Van Norman v. Upperman*, 231 Neb. 524, 436 N.W.2d 834 (1989), an action arising under the act, our opinion, unfortunately employing the same language as that used by the parties and lower court, speaks in terms of affirming the sustainment of a pretrial motion to dismiss. However, what was actually at issue was not a motion to dismiss, but a motion that the lower court decline to exercise its jurisdiction.

Grape's procedural impropriety aside, the fact is that the absence of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte. See *Plock v. Crossroads Joint Venture*, 239 Neb. 211, 475 N.W.2d 105 (1991).

Thus, it was quite appropriate for the Court of Appeals to concern itself with whether the district court possessed subject matter jurisdiction, for if it did not, neither would any reviewing tribunal. *Knerr v. Swigerd*, 243 Neb. 591, 500 N.W.2d 839 (1993).

## IV. THE ACT

The act, which virtually parallels the Uniform Child Custody Jurisdiction Act, 9 U.L.A. 115 (1988), governs child custody disputes having interstate implications. Section 43-1203(1) of the act provides in pertinent part:

A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before

commencement of the proceeding and the child is absent from this state because of his or her removal or retention by a person claiming his or her custody or for other reasons, and a parent or person acting as parent continues to live in this state;

(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his or her parents, or the child and at least one contestant, have a significant connection with this state and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships[.]

Section 43–1214(1) reads:

If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under· jurisdictional prerequisites substantially in accordance with sections 43–1201 to 43–1225 or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction.

The act defines "custody determination" as "a court decision and court orders and instructions providing for the custody of a child, including visitation rights, but shall not include a decision relating to child support or·any other monetary obligation of any person," § 43–1202(2); defines "initial decree" as the "first custody decree concerning a particular child," § 43–1202(6); and defines "home state" as the "state in which the child immediately preceding the time involved lived with his or her parents, a parent, or a person acting as parents for at least six consecutive months," § 43–12025(5).

The act further provides in § 43–1206 that a court of this state shall not exercise its jurisdiction

if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this act, unless the proceeding is stayed by the court of the other state because this state is a more appropriate

forum or for other reasons.

  . . . Before hearing the petition in a custody proceeding the court shall examine the pleadings and other information supplied by the parties under section 43–1209 and shall consult the child custody registry established under section 43–1216 concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state it shall direct an inquiry to the State Court Administrator or other appropriate official of the other state.

  . . . If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections 43–1219 to 43–1222. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.

Section 43–1207 further specifies that a court which has jurisdiction under the act to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum. Section 43–1207 then reads:

  Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the

parties. The court shall give to the parties the substance of any communication or exchange of information under this subsection, and afford the parties reasonable opportunity to respond.

. . . .

. . . Upon dismissal or stay of proceedings under this section the court shall inform the court found to be the more appropriate forum of this fact or, if the court which would have jurisdiction in the other state is not certainly known, shall transmit the information to the court administrator or other appropriate official for forwarding to the appropriate court.

. . . Any communication received from another state informing this state of a finding of inconvenient forum because a court of this state is the more appropriate forum shall be filed in the custody registry of the appropriate court. Upon assuming jurisdiction the court of this state shall inform the original court of this fact.

In addition, § 43-1208 provides: "Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody . . . has improperly retained the child after a visit or other temporary relinquishment of physical custody."

## V. ANALYSIS OF ISSUES RELATING TO SUBJECT MATTER JURISDICTION

With the foregoing matters in mind, we reach Grape's first assignment of error, which challenges the district court's finding that it had subject matter jurisdiction to entertain these proceedings. The Court of Appeals concluded that such jurisdiction was lacking because (1) the district court had made no record of any communication with the New York court, (2) Nebraska was not the boy's home state, (3) the district court did not have continuing jurisdiction by virtue of the March 1992 order, and (4) there were no significant connections with Nebraska.

Before proceeding to review each of those grounds, we recall that when a jurisdictional question does not involve a factual

dispute, determination of the issue is a matter of law which requires an appellate court to reach a conclusion independent from that of the trial court. *Bradley v. Hopkins,* 246 Neb. 646, 522 N.W.2d 394 (1994). However, when the determination rests on factual findings, a trial court's decision on the issue will be upheld unless the factual findings concerning jurisdiction are clearly incorrect. See *Williams v. Gould, Inc.,* 232 Neb. 862, 443 N.W.2d 577 (1989). The question as to whether jurisdiction existing under the act should be exercised is another matter. That determination is entrusted to the discretion of the trial court and is reviewed de novo on the record. See *Van Norman v. Upperman,* 231 Neb. 524, 436 N.W.2d 834 (1989). As in other matters entrusted to a trial judge's discretion, absent an abuse of discretion, the decision will be upheld on appeal. See, e.g., *Welch v. Welch,* 246 Neb. 435, 519 N.W.2d 262 (1994); *Kelly v. Kelly,* 246 Neb. 55, 516 N.W.2d 612 (1994).

## 1. COMMUNICATIONS

It is true that some courts have concluded that provisions like those of §§ 43–1206 and 43–1207 impose upon judges aware that proceedings are pending in another state a mandate to communicate with the out–of–state court. E.g., *In re Marriage of Pedowitz,* 179 Cal. App. 3d 992, 225 Cal. Rptr. 186 (1986); *Duval v. Duval,* 149 Vt. 506, 546 A.2d 1357 (1988), *overruled on other grounds, Shute v. Shute,* 158 Vt. 242, 607 A.2d 890 (1992); *In re Aisha B.,* 206 Cal. App. 3d 1030, 254 Cal. Rptr. 116 (1988); *Hickey v. Baxter,* 461 So. 2d 1364 (Fla. App. 1984); *Webb v. Webb,* 245 Ga. 650, 266 S.E.2d 463 (1980), *cert. dismissed* 451 U.S. 493, 101 S. Ct. 1889, 68 L. Ed. 2d 392 (1981); *In re Marriage of Nasica,* 12 Kan. App. 2d 794, 758 P.2d 240 (1988); *Matter of Appeal in Pima County,* 147 Ariz. 584, 712 P.2d 431 (Ariz. 1986). However, other courts have ruled that the failure to communicate with the court of another state does not in and of itself deprive the failing court of jurisdiction. *Sawle v. Nicholson,* 408 N.W.2d 173 (Minn. App. 1987); *Lofts v. Superior Court,* 140 Ariz. 407, 682 P.2d 412 (Ariz. 1984).

In *In re Interest of L.W.,* 241 Neb. 84, 486 N.W.2d 486 (1992), we directed that a court communicate with a foreign court to determine the appropriate forum. However, no issue concerning the property of such communication was present. In

other contexts, we have held that ex parte statements are too unreliable to be considered in the investigation of controverted facts and that due process requires that witnesses be subject to the right of cross-examination by the parties to the proceeding. *Jorgensen v. Jorgensen*, 194 Neb. 271, 231 N.W.2d 360 (1975); *Dier v. Dier*, 141 Neb. 685, 4 N.W.2d 731 (1942).

Nor is Canon 3 of the Nebraska Code of Judicial Conduct to be forgotten. It requires, in relevant part, that a judge perform the duties of judicial office impartially. The pertinent portions of Canon 3B(7) provide that a judge

shall not initiate, permit or consider ex parte communications or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:

(a) Where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized;

(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and

(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.

The resolution of a jurisdictional issue is a substantive matter. See *Yost v. Johnson*, 591 A.2d 178 (Del. 1991). See, also, *Allen v. Fisher*, 118 Ariz. 95, 574 P.2d 1314 (Ariz. App. 1977) (substantive law creates, defines, and regulates rights and duties of parties).

Furthermore, we have held that a judge who initiates or invites and receives an ex parte communication concerning a pending or impending proceeding must recuse himself or herself from the proceedings. *State v. Barker*, 227 Neb. 842, 420 N.W.2d 695 (1988). This rule is based on Neb. Evid. R. 605, which states in part that "[t]he judge presiding at the trial may not testify in that trial as a witness." Neb. Rev. Stat. 27-605 (Reissue 1989). A judge's role as a witness in a trial before the judge is manifestly inconsistent with the judge's customary role of impartiality in the adversary system of trial. *Barker, supra*,

citing McCormick on Evidence § 68 (Edward W. Cleary 3d ed. 1984).

At least one other court has recognized that communication between judges under statutory provisions similar to those at hand presents procedural due process concerns. In *Yost, supra*, the children's father lived in Delaware, and the mother and the children lived in Virginia. The Virginia court modified a custody decree that a Pennsylvania court initially rendered. Subsequent to the modification, the mother and children moved to Italy. When the children visited their father in Delaware, the father filed a petition for temporary custody in the Delaware family court and refused to return the children to their mother's custody. The mother challenged the Delaware family court's jurisdiction. However, the Delaware family court determined that it had jurisdiction after its judge had an ex parte telephone call with a Virginia judge. Even though there was no record of the conversation between the judges and no order from the Virginia judge, the Delaware family court judge acknowledged the conversation and concluded that Virginia had " 'declined jurisdiction.' " 591 A.2d at 181.

On appeal, the mother argued that the Delaware family court had violated her rights to procedural due process when it contacted the Virginia court without notifying the parties, failed to permit the parties to participate in the telephone conversation, and failed to create a written record of the phone call.

In reversing the judgment of the family court, the Supreme Court of Delaware held that the family court judge's ex parte communication with the Virginia judge resulted in a serious violation of the mother's due process rights and declared that a judge should not engage in a substantive ex parte communication concerning the merits of an issue pending before the court.

The due process and ethical problems which arise when judges turn into inquisitors by undertaking to personally investigate the facts in matters they must adjudicate illustrate one of the reasons the distribution of powers clause contained in Neb. Const. art. II, § 1, prohibits the legislative department of government from telling the judicial department of

government how to conduct judicial business. See *State, ex rel. Sorensen, v. State Bank of Minatare*, 123 Neb. 109, 242 N.W. 278 (1932) (imperative duty of judicial department to protect its jurisdiction at boundaries fixed by Constitution).

However, even when a statute is constitutionally suspect, courts will attempt to interpret it in a manner consistent with the Constitution. *Kwik Shop v. City of Lincoln*, 243 Neb. 178, 498 N.W.2d 102 (1993). If a statute is susceptible to more than one reasonable construction, the reviewing court uses the construction that will achieve the statute's purpose and preserve the statute's validity. *Ehlers v. Perry*, 242 Neb. 208, 494 N.W.2d 325 (1993). Thus, if the portions of §§ 43–1206 and 43–1207 at issue merely recommend that a judge engage in certain communications rather than command that the judge do so, that is, if the provisions are directory rather than mandatory, they will survive constitutional scrutiny.

There is no universal test by which directory provisions of a statute may be distinguished from mandatory provisions. *Anderson v. Board of Educational Lands & Funds*, 198 Neb. 793, 256 N.W.2d 318 (1977). Ordinarily, such differences must be determined by the intent of the Legislature as gleaned from the whole statute. *Id.*

While the word "shall" may render a particular provision mandatory in character, when the spirit and purpose of the legislation require that the word "shall" be construed as permissive rather than mandatory, such will be done. *Hartman v. Glenwood Tel. Membership Corp.*, 197 Neb. 359, 249 N.W.2d 468 (1977).

As an example, in *State, ex rel. Sorensen*, 123 Neb. at 113, 242 N.W. at 280, the statute in question provided that the " 'secretary of the department of trade and commerce shall be the sole and only receiver of failed or insolvent banks . . . .' " This court nonetheless ruled that in the context of a judicial proceeding, the statute amounted to no more than a legislative recommendation to the judiciary to appoint the secretary in the interests of economy and business management. The *Sorensen* court thus affirmed the lower court's appointment of someone other than the secretary. More recently, we have held that as the Legislature had not fashioned a remedy for the failure to hold a

hearing within the statutorily specified time, the statute was directory rather than mandatory. *In re Interest of C.P.*, 235 Neb. 276, 455 N.W.2d 138 (1990).

Neither do the statutory provisions here specify a remedy for a judge's failure to take on the investigatory tasks at issue; thus, we hold these provisions to be directory only and not mandatory. That being so, we need not concern ourselves with whether these provisions would, were they mandatory, pass constitutional scrutiny.

What is clear, however, is that the failure to follow a legislative recommendation does not divest a court of jurisdiction, particularly where due process and ethical concerns counsel against complying with the recommendation. It is for the parties to present the facts relating to the case and controversy a court is to adjudicate.

Thus, any failure of the district court to communicate with the New York court could not divest the district court of subject matter jurisdiction.

## 2. Home State

In *Mace v. Mace*, 215 Neb. 640, 341 N.W.2d 307 (1983), a habeas corpus action seeking to enforce a foreign custody judgment, we reviewed the jurisdictional basis under which the foreign court acted, determined that under the act Nebraska was the home state and therefore presumably the correct forum, and refused to enforce the foreign judgment. Here, the boy had neither been living in Nebraska with a parent or one acting as a parent for 6 months before Grape filed her motion for a custody order, nor had the boy been taken from Nebraska within 6 months prior to the filing of said motion. Thus, it is clear that Nebraska is not the home state as defined by the act.

## 3. Nature of March 1992 Order

However, it is also clear that the correctness of the home state as the forum may be overcome by the circumstances of a particular case. For example, in *Range v. Range*, 232 Neb. 410, 440 N.W.2d 691 (1989), we concluded the fact that the child in question had lived in Nebraska most of her 14 years gave her and her Nebraska father a significant connection with Nebraska. Distinguishing *Mace* on the basis that, there, most of the

evidence concerning the younger children involved was in Nebraska, which was the home state, we ruled in *Range* that the Nebraska courts had jurisdiction to adjudicate the matter of the child's custody notwithstanding that the foreign state was the home state. In so doing, we noted the act establishes a strong jurisdictional preference for the state which originally determined custody to exercise its continuing jurisdiction if the requirements of § 43–1203(1)(b) are satisfied. Other courts have also held that language like that contained in § 43–1214 establishes a strong preference for the state which originally determined custody to exercise its continuing jurisdiction if the jurisdictional prerequisites enumerated in the act are satisfied. E.g., *Kumar v. Superior Court of Santa Clara Cty.*, 32 Cal. 3d 689, 652 P.2d 1003, 186 Cal. Rptr. 772 (1982); *Kraft v. Dist. Ct.*, 197 Colo. 10, 593 P.2d 321 (1979); *Hamill v. Bower*, 487 So. 2d 345 (Fla. App. 1986); *Funk v. Macaulay*, 457 N.E.2d 223 (Ind. App. 1983); *In re Marriage of Leyda*, 398 N.W.2d 815 (Iowa 1987).

Thus, the nature of the March 1992 order entered in response to Grape's motion for a custody order is a pertinent inquiry.

Under the circumstances, the fact that the order arose in the context of a filiation proceeding is not significant. In *Cox v. Hendricks*, 208 Neb. 23, 302 N.W.2d 35 (1981), we held that in such an action in which paternity had been admitted and the natural father had demonstrated a familial relationship with the child and fulfilled his parental responsibilities of support and maintenance, the fact that the child was born out of wedlock was to be disregarded and custody determined on the basis of the child's best interests; there was no presumption favoring custody with either parent.

Here, Zach admitted paternity, paid child support, and maintained some contact with the boy before obtaining temporary custody over him. Thus, the fact that the boy was born out of wedlock is not relevant to the custody determination, for while an unwed mother is initially entitled to automatic custody of the child, see *Shoecraft v. Catholic Social Servs. Bureau*, 222 Neb. 574, 385 N.W.2d 448 (1986), the issue must ultimately be resolved on the basis of the fitness of the parents and the best interests of the child, see *Lancaster v.*

*Brenneis*, 227 Neb. 371, 417 N.W.2d 767 (1988).

Provided the evidence is such as to support a finding that entry of the order was in the boy's best interests, neither is it significant that the order fails to expressly find that placing custody in and with Grape was in the boy's best interests. In *Cox, supra*, we reasoned that as the evidence was sufficient to support a finding that placing custody in and with the mother was in the child's best interests, it did not matter that the order failed to contain an affirmative finding so declaring.

The March 1992 order fits the definition of a custody determination, as it provides for the custody of the boy. See, *Zellat v. Zellat*, 351 Pa. Super. 623, 506 A.2d 946 (1986) (where series of orders culminating in placement of child in exclusive possession and control of mother resulted in rendition of custody determination); *In re Marriage of Zierenberg*, 11 Cal. App. 4th 1436, 16 Cal. Rptr. 2d 238 (1992) (orders of court in Puerto Rico commanding mother to relinquish children from California to Puerto Rico and deliver them to father were custody orders).

However, what is significant is that although the March 1992 order purported to permanently affect Zach's custody status with respect to the boy, it was entered without any notice to him and without giving him an opportunity to be heard. The relationship between parent and child is constitutionally protected and thus cannot be affected without procedural due process. See, *Quilloin v. Walcott*, 434 U.S. 246, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978); *Meyer v. Nebraska*, 262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923); *Shoecraft, supra*. See, also, *Ex parte Harris*, 506 So. 2d 1003 (Ala. App. 1987).

Procedural due process includes notice to the person whose right is affected by the proceeding, that is, timely notice reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and hearing before an impartial decisionmaker. *In re Interest of*

*L. V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). See, also, *Black v. Black*, 223 Neb. 203, 388 N.W.2d 815 (1986); *Benton v. Board of Ed. of Sch. Dist. No. 17*, 219 Neb. 134, 361 N.W.2d 515 (1985); *State ex rel. Douglas v. Schroeder*, 212 Neb. 562, 324 N.W.2d 391 (1982). Under the circumstances, the March 1992 order was a nullity; an order which is a nullity cannot become the basis for any future judicial action. See *Wicker v. Vogel*, 246 Neb. 601, 521 N.W.2d 907 (1994).

Consequently, the March 1992 order did not create continuing subject matter jurisdiction in the district court.

### 4. Connection with Nebraska

Thus, so far as the record establishes, until the district court's April 29, 1993, order placing custody of the boy in and with Zach, no court had, as of that date, made a custody determination. (The record suggests, however, that Grape had initiated a custody proceeding in New York in the spring or summer of 1992, which resulted in the scheduling of a pretrial hearing for April 30, 1993, and further, that said proceeding may have been dismissed by the time of the April 22 trial in the district court.)

But under § 43–1203(1)(b), a state which is not the home state and which does not have continuing jurisdiction by virtue of having originally determined custody may nonetheless have jurisdiction if the relevant parties have significant contacts with the state and there is available in the state substantial evidence concerning the statutorily designated issues. The questions are whether it was in the boy's best interests that the district court exercise subject matter jurisdiction because the boy and both Grape and Zach or either of them had a significant connection with Nebraska and whether there was available in Nebraska substantial evidence concerning the boy's present or future care, protection, training, and personal relationships.

In resolving those questions, it must be remembered that the boy was born in Nebraska and lived in Nebraska for over 3 years before he was taken to New York; that Grape returned to Nebraska with the boy because she was homesick and having problems with her live–in boyfriend; that about 5 weeks later, she sought a custody determination from the district court; and

that the boy's maternal grandparents live in Nebraska. Under the circumstances, not only the boy, but if not Grape, at least Zach, had a significant connection with Nebraska at the time Zach filed his application for custody. See, *Scheafnocker v. Scheafnocker*, 356 Pa. Super. 118, 514 A.2d 172 (1986); *Houtchens v. Houtchens*, 488 A.2d 726 (R.I. 1985); *Lustig v Lustig*, 99 Mich. App. 716, 299 N.W.2d 375 (1980).

Moreover, while the guardian ad litem would have liked to have been able to visit with Grape in New York, he nonetheless was able to detail a variety of reasons on which he based his recommendation that the boy's custody be placed in and with Zach. Indeed, as the recitation of the relevant portions of the record in part VI below establishes, there was in Nebraska substantial evidence concerning the boy's present and future care, protection, training, and personal relationships as to enable the district court to adjudicate the matter, and it was therefore in the boy's best interests that the district court assume jurisdiction.

Nor is there any merit in Grape's suggestion that § 43–1208 precludes the exercise of jurisdiction because Zach improperly retained the boy beyond the agreed period of visitation. The short answer is that the provision applies only where there exists a custody decree of another state. So far as the record establishes, such is not the situation here.

Accordingly, the district court had subject matter jurisdiction and did not abuse its discretion in deciding to exercise it.

## VI. ANALYSIS OF CUSTODY ISSUE

Although the Court of Appeals did not reach the issue, the foregoing determination leads us to consider Grape's second assignment of error, in which she claims the district court erred by placing the boy's custody in and with Zach.

It therefore becomes necessary to recall that in a filiation proceeding, questions concerning custody of the child are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. In such de novo review, when the evidence is in

conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Lancaster v. Brenneis*, 227 Neb. 371, 417 N.W.2d 767 (1988).

When Zach first took possession of the boy in 1992, the boy was 7 pounds underweight, had bruises on various parts of his body, and was covered with insect bites and a rash. While under Zach's care, the boy began visits with a speech pathologist and a child psychologist to address his developmental problems. In addition, Zach enrolled the boy in school and immediately sought medical treatment for his condition.

While the record reflects that Zach was incarcerated for burglary at the time of the boy's birth, his record contains no subsequent convictions or arrests for other than traffic matters. He has been married for 3 years, has held the same job for 5 years, and has lived in Lincoln, Nebraska, his entire life. He and his wife have a house in which they live with the boy and the wife's son, and each child has his own bedroom. Zach has arranged a regular babysitter to care for the boy while he and his wife are working. Furthermore, Zach, his wife, her son, and the boy have attended family counseling to ease the boy's transition into their family. The boy has developed friendships and continues to receive treatment for his special needs.

In contrast, the record reflects that Grape is an unmarried mother of at least four children, who has a history of illegal drug abuse and who has moved between Nebraska and New York. While in New York, Grape, her boyfriend, and her children, at least one of whom was sired by the boyfriend, live in a rebuilt house which, at the time of the trial in question, still displayed signs of fire damage and had been without running water for a period of time. Grape's live-in boyfriend also has a history of illegal drug usage and abusive behavior. Moreover, Grape has applied for protection orders against her boyfriend on two separate occasions. She had arranged minimal medical care for the boy and had failed to arrange any treatment for the boy's speech impairment.

Not only, as noted above, did the guardian ad litem conclude it was in the boy's best interests that his custody be placed in and with Zach, but Grape's parents were of that view.

Under that state of the record, it cannot be said that the district court abused its discretion in ruling as it did.

## VII. JUDGMENT

Accordingly, the judgment of the Court of Appeals is reversed and the cause remanded with the direction that it reinstate the judgment of the district court.

REVERSED AND REMANDED WITH DIRECTION.