ABDEL G.S. Respondent
Below, Appellant,

v.

BADRBAN H.K. Petitioner
Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 9, 1982.
Decided: Nov. 17, 1982.

Abdel G.S., pro se.

H. Alfred Tarrant, Jr. (argued), C. Scott Reese, Cooch & Taylor, Wilmington, for petitioner below, appellee.

Before HERRMANN, Chief Justice, HORSEY and MOORE, Justices.

MOORE, Justice:

In this pro se appeal from two orders of the Family Court, apportioning marital property and debts and awarding the appellee-wife a percentage of her legal fees, we address only the propriety of the trial judge's sua sponte examination of a draft settlement proposal to which the parties did not agree and the court's ultimate adoption of that draft as the order of the court. Because of the magnitude of this error, we reverse and order a new trial before another judge.

I.

The procedural background of this case is significant. The parties were divorced on June 7, 1979 and the Family Court retained ancillary jurisdiction, pursuant to 13 Del.C. § 1513, for a division of marital property.[1] An order apportioning this property was entered in December 1981 and was followed

1. The pertinent provisions of 13 Del.C. § 1513 are set forth in Part II of this Opinion.

by an order in January 1982 awarding the wife a part of her legal fees under 13 *Del.C.* § 1515.[2] The husband appeals from both orders.

Immediately before the start of the ancillary hearing counsel for both parties and the trial judge conferred in chambers.[3] The judge inquired whether settlement had been discussed and was advised that the parties were "close" to agreement, but they were unable to resolve the disposition of certain real estate parcels, which were their major assets in the United States. The judge also was told that a proposed stipulation and order of settlement had been drafted (by wife's counsel), purportedly compromising all their property disputes, but which neither party would sign absent agreement as to the real estate.

Sua sponte the trial judge requested, received and reviewed this document, apparently without objection from counsel for either party. That this settlement proposal, drafted to favor the wife's ideas of a compromise, weighed heavily in the court's ultimate disposition is evident from the trial judge's order:

> Counsel for the parties have engaged in substantial settlement negotiations resulting drafts [sic] of stipulated orders prepared by each attorney, followed by a subsequent compromised draft *which the Court requested from counsel and reviewed* in detail.
>
> \*  \*  \*  \*  \*  \*
>
> ... The Court concludes that the draft represents a fair and equitable resolution of ancillary matters *and adopts the compromised draft as the order of the Court.* (Emphasis added)

**2.** 13 *Del.C.* § 1515. *Attorney's Fees.*

The Court from time to time after considering the financial resources of both parties may order a party to pay all or part of the cost to the other party of maintaining or defending any proceeding under this title and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after the entry of judgment. The Court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

## II.

■ In a division of marital property the only factors which the Family Court may consider are those mandated by statute. Thus, 13 *Del.C.* § 1513, provides in pertinent part:

> ... (a) In a proceeding for divorce or annulment, the Court shall, upon request of either party, equitably divide, distribute and assign the marital property between the parties without regard to marital misconduct, in such proportions as the Court deems just after considering all relevant factors including:
>
> (1) The length of the marriage;
>
> (2) Any prior marriage of the party;
>
> (3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties;
>
> (4) Whether the property award is in lieu of or in addition to alimony;
>
> (5) The opportunity of each for future acquisitions of capital assets and income;
>
> (6) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker or husband;
>
> (7) The value of the property set apart to each party;
>
> (8) The economic circumstances of each party at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the party with whom any children of the marriage will live;

**3.** At that time the husband was represented by counsel, but in accord with Family Court practice, the litigants were excluded from the in camera proceedings. No transcript of this conference exists since it is not a Family Court practice to have either a court reporter or recording device present on such occasions. However, the recitation of facts here is based on that contained in the wife's brief, which was prepared by her counsel, who attended this conference, his very candid responses to the Court's questions at oral argument, and the unreported opinion of the trial court, all of which are consistent with each other.

(9) Whether the property was acquired by gift, bequest, devise or descent;

(10) The debts of the parties; and

(11) Tax consequences.

Nothing in our law suggests that the Family Court may exceed its powers and consider matters other than those set out in 13 *Del.C.* § 1513. Moreover, Delaware law rejects reference to "evidence" of negotiations which the court here not only considered, but adopted "as the order of the Court". The Delaware Uniform Rules of Evidence are explicit on this point:

Rule 408. Compromise and Offers to Compromise.

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount *is not admissible* to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise *not admissible* . . . . (Emphasis added.)

In the face of this, there can be no acceptable basis for the trial judge to have acted sua sponte to request and consider a draft compromise agreement prepared by one party, much less to adopt it as the "order of the Court."

### III.

The problem here has two roots. One was the conference held in chambers, shortly before the hearing began, to discuss the substance of settlement proposals with counsel while the parties, who knew nothing of what was happening, were totally excluded.[4]

■ Under appropriate circumstances in camera proceedings, if confined to purely legal issues and a very careful and limited inquiry about the possibilities of settlement, may be salutary, particularly in the context of the emotionally charged atmosphere of a Family Court hearing when the litigants are present. Indeed, the trial court has discretion to confer with counsel out of the presence of their clients, but whenever the court does so it must proceed with the utmost caution and judicial restraint. Under no circumstances may it use that occasion to resolve any factual issue on the merits by stipulation of counsel or otherwise unless the parties have clearly agreed on the record. Nor may the court employ this practice to inject itself into the substance of settlement negotiations or to coerce a compromise, however subtle or well intentioned its efforts may be. In the context of this case it also appears that by injecting itself into the merits of the factual positions or contentions of the parties, when the parties were excluded, the trial judge violated Family Court Rule 330(a), which provides:

(a) Parties. No party to a hearing shall be excluded from an adjudicatory hearing except for good cause.

We entertain no doubt that these in camera proceedings were an extension of the trial, and resulted in a violation of both the intent and spirit of the law, the due process rights of the parties,[5] and the Family Court's own rules. Unless the Family Court acts with the caution and restraint that is absolutely essential under the circumstances, it is all too easy for these in camera proceedings to pass from salutariness to that which is pernicious to our system of fair play and justice.

The second root of this problem is the former requirement by the Family Court that the parties file a highly detailed pretrial statement, called a "Joint Asset Report", disclosing "settlement offers of each party".[6] Any failure by the litigants or

---

4. So far as we are aware, this practice of a trial judge injecting himself into the substance of settlement proposals continues among certain members of the Family Court, but it would be incorrect to infer that it is a common Family Court procedure utilized by all the judges. In any event, it must stop.

5. U.S. Const. Amend XIV, § 1; Del. Const. art. I, §§ 7 and 9

6. We understand that the form of Joint Asset Report now in use by the Family Court has eliminated the earlier requirement that settlement offers of each party be disclosed.

their counsel to make such disclosure could have resulted in severe sanctions.[7] That report is efficacious insofar as it has mandated disclosure of facts pertinent to a division of marital property, the support of a spouse, an award of attorney's fees and the narrowing of disputed issues, but it did more than that here.

 To require the disclosure of settlement proposals as a standard pre-trial device, linked with the compulsion of sanctions, was totally improper. Rule 408, Delaware Uniform Rules of Evidence. It added nothing of relevant probative value to the factors the Family Court must consider under 13 *Del.C.* § 1513(a), *supra*. It is fortunate that the requirement of such disclosure has been abandoned.

### IV.

It is suggested that what happened here was done without objection of counsel. Were this an issue of lawyer-induced error in which evidence was proffered by counsel and admitted without objection we might be inclined to agree. But that is not the case. Here, there was a pervasive intent through the compulsion of Family Court rule and customary pre-trial procedure to elicit the improper. The trial judge's actions were an extension of that practice, and where the court sua sponte induced counsel by "request" or otherwise to produce inadmissible and highly prejudicial evidence during an off the record proceeding in chambers, counsel were placed in such an untenable position that the only realistic way for such an error to be purged is to reverse the tainted judgment of the trial court in its entirety.

There also is a beguiling appearance to the suggestion that the issues between the parties had all been resolved, except for one point, and thus no harm could flow from the trial court's reference to the proposed compromise agreement. However, this overlooks the essence of the situation. What a party may be willing to concede for purposes of a compromise is usually conditioned upon acceptable concessions from the other. Without an accord on all issues within the ambit of the negotiations, there is no agreement, and thus no settlement. In treating certain matters as undisputed, merely because they appeared to have been resolved in the negotiating process, the trial judge ignored that such concessions were made in an effort to settle all disputes. When that endeavor failed, each party had to be free to pursue all their rights and remedies. Were it otherwise, no one would even consider attempting to negotiate their differences. It is consonant with strong public policy to encourage settlements and relieve calendar congestion. That also is the purpose of Rule 408 of the Delaware Uniform Rules of Evidence.

We recognize that a Family Court Judge works under very difficult circumstances, but in doing so, the powers and duties of that office must not be misconstrued. In some respects a Family Court Judge has equitable powers, but that is so only in a very limited sense. The court and its powers are solely the result of statute, and when proceeding on what is perceived to be an equitable basis, the trial judge could not do so in disregard of the law or in violation of the rights of litigants before him.

Accordingly, the orders from which these appeals were taken are reversed and the matters are remanded with instructions that the case be assigned to a different judge for a new trial consistent herewith.

\* \* \*

**REVERSED AND REMANDED.**

---

**7.** Thus, Family Court Rule 465(b) provided, as it still does respecting the present form in use, that any failure of counsel to cooperate in the preparation of the report may permit the court to enter a judgment or order granting the relief sought by the opposing party, including an assessment of counsel fees and other sanctions as the Court may deem appropriate. Similar sanctions may be imposed on a noncomplying party [Rule 465(e)].